United States District Court
Southern District of Texas
**ENTERED**
June 13, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **NIURKA MARIA GARCIA ANDRE,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-cv-1754** |
| | § | |
| **MARTIN O'MALLEY,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Niurka Maria Garcia Andre ("Plaintiff") filed this lawsuit against Defendant Martin O'Malley ("Commissioner") seeking review of the denial of benefits under Title II and XVI of the Social Security Act. (ECF No. 1).[1]  Pending before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 10, 13).[2]  Based on a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (ECF No. 10) be **GRANTED IN PART** and **DENIED IN PART** and Commissioner's Motion for Summary Judgment (ECF No. 13) be

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] On April 22, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 15).

**GRANTED IN PART** and **DENIED IN PART**.  The Court **FURTHER RECOMMENDS** that the case be **REMANDED** for further administrative proceedings consistent with this memorandum.

## I.  Background

Plaintiff filed a claim for disability insurance benefits and supplemental security income on June 12, 2017, alleging disability starting on February 3, 2017.  (ECF No. 7-1 at 26).[3]  Plaintiff sought benefits for chronic post-traumatic stress disorder ("PTSD"), lumbar radiculopathy, attempted suicide, depression, anxiety, diabetes, high blood pressure, and migraines.  (*Id.* at 140–41).  Plaintiff's claims were initially denied by the Social Security Administration on November 1, 2017, and again on reconsideration on July 18, 2018.  (ECF No. 10 at 4).  On March 19, 2019, Plaintiff appeared and testified at a hearing before Administrative Law Judge Michelle Whetsel (the "ALJ").  (ECF No. 7-1 at 102).  The ALJ issued a decision on May 22, 2019, finding Plaintiff not disabled.  (*Id.* at 205).

Plaintiff appealed to the Appeals Council and the Appeals Council granted Plaintiff's request for review on November 4, 2019.  (*Id.* at 211).  The Appeals Council vacated the ALJ's decision and remanded the case to the ALJ.  (*Id.* at 213).  The Appeals Council directed the ALJ to "give further

---

[3] The Administrative Record in this case can be found at ECF No. 7-1.

consideration to [Plaintiff]'s ability to communicate in English," "give further consideration to claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations," and "obtain supplemental evidence from a vocational expert  to clarify the effect of the assessed limitations on [Plaintiff]'s occupational base" and identify and resolve any conflicts between the occupational evidence.  (*Id.* at 214).

On August 23, 2022, Plaintiff appeared and testified at a supplemental hearing before the ALJ in accordance with the Appeals Council's instructions upon remand.  (*Id.* at 26).  Plaintiff was represented by counsel and a Spanish interpreter assisted at the hearing.  (*Id.*).  Kasey C. Suggs, vocational expert ("VE"), also testified at the hearing.  (*Id.*).  On September 16, 2022, the ALJ again found Plaintiff not disabled.  (*Id.* at 45).[4]

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 3, 2017.  (*Id.* at 29).  At Step Two, the ALJ found Plaintiff has the following severe impairments: "obesity, degenerative disc

---

[4] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.  *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

disease of the lumbar, cervical, and thoracic spine, osteoarthritis, carpal tunnel syndrome of the right hand, sleep apnea, left shoulder disorder, varicose veins, and anxiety/posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).” (*Id*.).  At Step Three, the ALJ found Plaintiff “does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).”   (*Id*.).   The ALJ determined that Plaintiff has the Residual Functional Capacity (“RFC”) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. She can occasionally, balance, stoop, kneel, crouch and crawl. The claimant should avoid concentrated exposure to unprotected heights, and wet slippery, uneven surfaces. She can frequently reach in all directions, including overhead, bilaterally. The claimant can frequently handle and finger with her right hand. He [sic] can occasionally push, pull, and operate foot controls, bilaterally. Mentally, the claimant can remember and follow detailed, but not complex instructions. The claimant can perform the tasks assigned, but not at a production rate pace; however, she can meet the end of day work goals. The claimant can have occasional contact with co-workers, supervisors, and the general public. She can occasionally adapt to changes in the workplace.

(*Id*. at 32).  At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (*Id*. at 43).  Finally, at Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff

could perform—such as copy machine operator, cleaner, and mail room sorter—and therefore Plaintiff was not disabled as defined under the Social Security Act. (*Id.* at 44).

Plaintiff appealed again to the Appeals Council and the Appeals Council denied Plaintiff's request for review on February 24, 2023. (*Id.* at 7). Thus, the ALJ's decision represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

## II.   Legal Standard

The court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "[R]eview of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence."

*Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

## III.   Discussion

Plaintiff asserts two points of error. First, Plaintiff argues the ALJ failed to properly evaluate medical opinions in compliance with the mandatory

6

articulation requirements of 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).  (ECF No. 10 at 16–17).  Second, Plaintiff argues that the ALJ's determination that Plaintiff's use of an assistive walking device is not medically necessary is not based on relevant evidence and is not supported by substantial evidence.  (*Id.* at 27).  Conversely, Commissioner argues that the ALJ properly determined Plaintiff's RFC by considering all the relevant evidence in accordance with the pertinent regulations and that the ALJ did not err in concluding Plaintiff's use of an assistive walking device was not medically necessary.  (ECF No. 13 at 8, 23).  The Court will first assess Plaintiff's second point of error.

### A.   Assistive Walking Device

Plaintiff claims that the ALJ's finding that Plaintiff's use of an assistive walking device is not medically necessary is not based upon relevant evidence and is not supported by substantial evidence.   (ECF No. 10 at 27, 33).  Specifically, Plaintiff alleges that the ALJ failed to identify "specific medical findings or reports in support of her conclusion . . . while [Plaintiff] has identified multiple medical examination findings, including an abnormal gait, as well as the opinions of a treating and an examining physician, that support the medical necessity of her use of an assistive device."  (*Id.* at 33).

To find an assistive device is medically required, "there must be medical documentation establishing the need for a hand-held device to aid in walking

7

or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  However, the ALJ "must always consider the particular facts of a case." *Id.*  "Neither a prescription for a hand-held assistive device, nor a lack thereof, is necessarily dispositive of medical necessity." *Duenes v. Kijakazi*, 578 F. Supp. 3d 859, 871–72 (S.D. Tex. 2022) (internal quotation and citation omitted).

Here, the ALJ noted that Plaintiff occasionally uses a walker/assistive device as recommended by her doctor.  (ECF No. 7-1 at 32).  The ALJ also recognized that during a medical examination with Dr. Willits on June 13, 2018, Plaintiff was "able to ambulate only with a cane" and that her "gait was very slow, wide-based, with a limp and a tendency to drag her left foot." (*Id.* at 34, 39).  However, the ALJ explains that Plaintiff's complaints and Dr. Willits's finding that she cannot ambulate without a cane is not "wholly supported by or consistent with the exam results or other evidence of record." (*Id.* at 40).  For instance, the ALJ states that "radiological findings showed only mild degenerative disc disease of the lumbar spine" and cites to an exam explaining "[m]ild degenerative change of the cervical spine is seen, most prominent at C5-C6. No significant spinal canal stenosis or neural foraminal

stenosis is seen." (*Id.* at 35, 40, 1265).   Furthermore, the ALJ states that Plaintiff "was observed to have a normal gait in many exams" and cites to exams located in Exhibit Nos. 1F, 3F, and 5F, which are consistent with this observation.   (*Id.* at 34, 40, 650, 835, 896).   The ALJ finds that "absent the reference by [Dr. Willits on June 13, 2018,] there is no evidence of a documented need for an assistive device, and it appears the reference to such a need is primarily based on [Plaintiff's] self-reported use." (*Id.*).   Finally, the ALJ concludes that "while there is a reference to use a walker only as needed for pain exacerbation there is no prescription for an assistive device in the evidence of record, and as stated above, the evidence presented does not establish a medical need for an assistive device." (*Id.* at 43).

The ALJ considered the objective medical evidence and subjective evidence in determining that an assistive device was not medically required. *See Duenes*, 578 F. Supp. 3d at 872 (finding an ALJ erred in their RFC assessment that failed to address the objective medical evidence and subjective evidence that supported a need for a cane to ambulate).   Accordingly, the Court finds that substantial evidence supports the ALJ's decision not to include a need for an assistive device in the RFC.   *See Barnes v. Astrue*, No. 07-cv-4377, 2008 WL 5348225, at *11 (S.D. Tex. Dec. 22, 2008) ("The issue is not how much

evidence supports a finding of disability, but, rather, whether substantial evidence supports the ALJ's finding that Plaintiff was not disabled.").

Next, the Court addresses the ALJ's reference to the lack of a prescription for an assistive device. (ECF No. 7-1 at 43). The ALJ's states, "while there is a reference to use a walker only as needed for pain exacerbation there is no prescription for an assistive device in the evidence of record, and as stated above, the evidence presented does not establish a medical need for an assistive device." (*Id.*). Case law clearly establishes that "[n]either a prescription for a hand-held assistive device, nor a lack thereof, is necessarily dispositive of medical necessity." *Duenes*, 578 F. Supp. 3d at 871–72 (internal quotation and citation omitted). Because the Court finds there is substantial evidence to support the ALJ's finding, the Court notes that Plaintiff's lack of a prescription for an assistive device is not the only basis for the ALJ's decision to find an assistive device not medically necessary.

**B.   Medical Opinions**

Plaintiff argues that the ALJ failed to properly evaluate the opinions of Dr. Roberta Herman, Dr. Robin Rosenstock, Dr. Kevin Moran, Dr. Verne Willits, Dr. Richard Campa, Dr. Robert White, and Dr. Cecilia Lonnecker (collectively, the "Doctors"). Plaintiff further claims that, because the ALJ found the Doctors' medical opinions equally persuasive but did not explain her

consideration of all the factors under set forth in 20 C.F.R. §§ 404.1520c(c), 416.920(c), the ALJ failed to comply with the mandatory articulation requirements.[5]  (ECF No. 10 at 18).  Here, the ALJ found that the opinions of Dr. Herman, Dr. Rosenstock, Dr. Moran, and Dr. Willits all equally persuasive in that they were "only somewhat persuasive" regarding Plaintiff's physical functioning limitations.  (*Id.*)  Further, the ALJ found the opinions of Dr. Campa, Dr. White, and Dr. Lonnecker all "somewhat persuasive" regarding Plaintiff's mental functioning limitations.  (*Id.* at 20).

For claims filed on or after March 27, 2017, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's persuasiveness.  *See Shugart v. Kijakazi*, No. 3:21-cv-00007, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c).  "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion."[6]

---

[5] The Court will note that the Commissioner attempts to cite specific portions of the record to support the ALJ's findings.  (ECF No. 13 at 24).  However, "post hoc rationalizations cannot retroactively justify the agency's decision."  *Noranda Alumina, L.L.C. v. Perez*, 841 F.3d 661, 666 (5th Cir. 2016).  To be clear, "it is a fundamental rule of administrative law that 'in dealing with a determination or judgment which an administrative agency alone is authorized to make, [a reviewing court] must judge the propriety of such action solely by the grounds invoked by the agency.'"  *Guillory v. Berryhill*, 738 F. App'x 290, 291–92 (5th Cir. 2018) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  As such, the Commissioner's attempt to cure the ALJ's insufficient references to the record cannot retroactively justify the ALJ's decision.

[6] These are the factors located in 20 C.F.R. § 404.1520c(c)(1)–(c)(5), respectively.

*Id.* (citing and quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are supportability and consistency.[7] *Id.* § 404.1520c(b)(2); *see also Pearson v. Comm'r of Soc. Sec.*, No. 1:20-cv-166, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted*, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021) (explaining that a "sufficient explanation of the supportability and consistency of medical opinions is . . . a critical portion of the analysis."). Because supportability and consistency are the two most important factors, the regulations state that an ALJ "will explain how [they] considered supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [their] determination or decision." 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

According to the Code of Federal Regulations, ALJs "may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [ALJs] articulate how [they] consider medical opinions and prior administrative medical findings in [a plaintiff's]

---

[7] "Supportability" focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). "Consistency" is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *See id.* § 404.1520c(c)(2).

case record." 20 C.F.R. § 404.1520c(b)(2).  However, if an ALJ finds "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same, [ALJs] will articulate how [they] considered the other [] persuasive factors in paragraphs (c)(3) through (c)(5) of this section."  20 C.F.R. § 404.1520c(b)(3).

When analyzing the sufficiency of an ALJ's explanation, courts have required that "there be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding."  *Pearson*, 2021 WL 3708047, at *5 (collecting cases).  "A generic statement or summary that a medical provider's opinion is inconsistent with the record as a whole does not suffice because 'the Court cannot undertake a meaningful review of the ALJ's consideration' of the medical opinions."  *Rodriguez v. Kijakazi*, No. 4:21-cv-02087, 2022 WL 18396335, at *4 (S.D. Tex. Dec. 15, 2022), *report and recommendation adopted sub nom. Rodriguez v. Comm'r of Soc. Sec.*, No. 4:21-cv-02087, 2023 WL 2695117 (S.D. Tex. Mar. 27, 2023) (quoting *Pearson*, 2021 WL 3708047, at *5)). "[T]he ALJ cannot summarize the entire record and summarily conclude that, in light of that record, one medical opinion is persuasive and the other is not persuasive."  *Pearson*, 2021 WL 3708047, at *5.  "At a minimum, an ALJ's persuasiveness explanation should enable the court to undertake a meaningful

13

review of whether his finding with regard to the particular medical opinion was supported by substantial evidence." *Ramirez v. Kijakazi*, No. 4:21-cv-03780, 2023 WL 1456786, at *3 (S.D. Tex. Feb. 1, 2023), *report and recommendation adopted*, No. 4:21-cv-03780, 2023 WL 2145541 (S.D. Tex. Feb. 21, 2023). Without guidance from the ALJ, the reviewing court can only speculate about their reasons for finding an opinion unpersuasive. *Ramirez v. Saul*, No. SA-20-cv-00457, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021); *Pearson*, 2021 WL 3708047, at *5.

### 1. Dr. Roberta Herman and Dr. Robin Rosenstock

In finding Dr. Herman and Dr. Rosenstock's medical opinions only somewhat persuasive, the ALJ provided the following explanation:

> While they are consistent with the determination that the claimant's conditions [a]re not disabling and limit the claimant to light exertion, the evidence available at the hearing level supports more restrictive limits on the claimant's ability to perform postural movements, climb, use her extremities and hands, as well as be exposed to workplace hazards. (See Exhibits 1F-26F). Accordingly, the evidence available at the hearing level is consistent with the residual functional capacity set forth herein.

(ECF No. 7-1 at 38).

In discussing the supportability of Dr. Herman and Dr. Rosenstock's opinions, the ALJ did not address how specific portions of the medical evidence did not support the provider's opinion. (*Id.*). Further, in comparing the evidence with the opinion to make a consistency finding, the ALJ failed to

14

specifically note where the evidence conflicted with Dr. Herman and Dr. Rosenstock's opinions. (*Id.*). Rather, the ALJ cites over 800 pages of the record to support her conclusory statement that "the evidence available at the hearing level supports more restrictive limits on the claimant's ability to perform postural movements, climb, use her extremities and hands, as well as be exposed to workplace hazards." (*Id.*). The ALJ did not cite a specific record in the evidence to support this conclusion and simply refers to over 800 pages of medical evidence as the "evidence available at the hearing level." (*Id.*).

Thus, the ALJ did not provide more than a generic, cursory explanation of her findings. *See Rodriguez*, 2022 WL 18396335, at *4 (finding an ALJ's analysis failed to comply where it did not discuss the supportability of a medical opinion and where it concluded the medical opinion was consistent with the ALJ's own conclusions); *Howen v. Saul*, No. 4:19-cv-4358, 2021 WL 1169331, at *6 (S.D. Tex. Mar. 25, 2021) (describing an ALJ's finding as to a medical opinion as "cursory" where the ALJ wholly failed to articulate how the medical evidence and the doctor's explanations supported the opinion or how consistent the opinion was with other sources); *King v. O'Malley*, No. 4:22-cv-932-ALM-KPJ, 2024 WL 1186896, at *6 (E.D. Tex. Mar. 1, 2024), *report and recommendation adopted*, No. 4:22-cv-932, 2024 WL 1180992 (E.D. Tex. Mar. 19, 2024) ("The ALJ must . . . cite 'specific evidence in the record' supporting

15

his supportability and consistency determinations.").  As such, the Court finds that substantial evidence does not support the ALJ's evaluation of Dr. Herman and Dr. Rosenstock.  *Cf. Ramirez*, 2023 WL 1456786, at *4 (finding substantial evidence where the ALJ properly considered a medical opinion, found it somewhat persuasive, and provided ample explanation for their finding by stating "it is inconsistent with the symptoms that [Ramirez] report to [Dr. Mendez]").  Because the ALJ's explanation of supportability and consistency is lacking, the Court need not address the factors in 20 C.F.R. § 404.1520c(c)(3)–(c)(5).

### 2.  Dr. Kevin Moran

In finding Dr. Moran's medical opinion only somewhat persuasive, the ALJ provided the following explanation:

> Although the general diagnoses [sic] of carpal tunnel syndrome is consistent with the evidence of record, the limitation regarding lifting is not wholly supported by or consistent with the evidence of record available at the hearing level. (See Exhibits 1F-26F). For example, exams show the claimant with normal motor strength in her upper and lower extremities with intact sensory functions. (Id.) Further, the opinion that the claimant cannot work is reserved for the commissioner. Overall, the evidence available at the hearing level supports restrictions on the claimant's ability to lift, but to no greater than a limitation to light exertional level. Accordingly, the evidence available at the hearing level is consistent with the residual functional capacity set forth herein.

(ECF No. 7-1 at 39).

Similar to the discussion above, the ALJ did not specifically note where Dr. Moran's opinion was not supported by the medical evidence and how the opinion compared to the other evidence in the record. (*Id.*). Rather, the ALJ again cites over 800 pages of the record to support her conclusory statement that "the evidence available at the hearing level supports restrictions on the claimant's ability to lift, but to no greater than a limitation to light exertional level." (*Id.*). The ALJ did not cite a specific record in the evidence to support this conclusion and simply refers to over 800 pages of medical evidence as the "evidence available at the hearing level." (*Id.*).

Thus, the ALJ did not provide more than a generic, cursory explanation of her findings. *See Rodriguez*, 2022 WL 18396335, at *4; *Howen*, 2021 WL 1169331, at *6. As such, the Court finds that substantial evidence does not support the ALJ's evaluation of Dr. Moran. *Cf. Ramirez*, 2023 WL 1456786, at *4. Because the ALJ's explanation of supportability and consistency is lacking, the Court need not address the factors in 20 C.F.R. § 404.1520c(c)(3)–(c)(5).

### 3. Dr. Verne Willits

In finding Dr. Willits's medical opinion only somewhat persuasive, the ALJ provided the following explanation:

> While the general diagnosis of a degenerative back condition is consistent with the evidence of record, and objective findings, the opinion regarding the claimant's ability to sit, stand, walk, lift and carry seems not to be wholly supported by or consistent with the

17

exam results or the evidence of record . . . [T]he statement that the claimant cannot ambulate without a cane seems also not to be wholly supported by or consistent with the exam results or other evidence of record. For example, as noted, radiological findings showed only mild degenerative disc disease of the lumbar spine. Further, the claimant was observed to have a normal gait in many exams. Additionally, absent the reference by the examiner, there is no evidence of a documented need for an assistive device, and it appears the reference to such a need is primarily based on the claimant's self-reported use. (See Exhibits 1F-26F). Therefore, the undersigned concludes the use of a cane seems not to be medically necessary. In addition, the opinion that the claimant has a visual impairment or urinary incontinence seems also to be not wholly supported by or consistent with the exam results or the other evidence of record. For example, there is no evidence to support a significant visual impairment as the claimant was found to have a [sic] uncorrected visual acuity of 20/25 in both eyes. Further, there is no evidence of any ongoing complaints or treatment related to urinary incontinence. Moreover, as noted, the evidence available at the hearing level supports a finding of severe impairments that limit the claimant's abilities, but to no greater degree than set out in the residual functional capacity. (See Exhibits 1F-26F). For example, in August 2019, the claimant was able to ambulate without limitation. She had 5/5 motor strength in all extremities. There were no neurological deficits. (Id.) Accordingly, the evidence available at the hearing level is consistent with the residual functional capacity set forth herein.

(ECF No. 7-1 at 40).

First, the Court will address Dr. Willits's opinion regarding Plaintiff's ability to sit, stand, walk, lift, and carry and Plaintiff's use of an assistive device. The ALJ finds that Dr. Willits's opinion "seems not to be wholly supported by or consistent with the exam results or the evidence of record." (*Id.*). In reaching this conclusion, the ALJ references and cites the many exams

where Plaintiff had a normal gait, as mentioned previously, which are not consistent or wholly supported by Dr. Willits's opinion. (*Id.*). Accordingly, there is a discernable "logic bridge" between the evidence and the ALJ's persuasiveness finding.

Furthermore, the ALJ is not required to address the 20 C.F.R. § 404.1520c(c)(3)–(c)(5) factors. Here, Plaintiff argues that Dr. Willits's opinions were found to be "equally persuasive" but not exactly the same as Dr. Moran, Dr. Herman, and Dr. Rosenstock, thus requiring an analysis of the 20 C.F.R. § 404.1520c(c)(3)–(c)(5) factors. (ECF No. 10 at 21). However, the ALJ does not find each of these doctors' opinions "equally well-supported." With respect to Dr. Willits, the ALJ refers to specific exams that are clearly identifiable in the decision to support her findings, but with respect to Dr. Moran, Dr. Herman, and Dr. Rosenstock, the ALJ does not clearly identify evidence to support her findings. *See Cooley*, 587 F. Supp. 3d at 497 ("On its face, the 20 C.F.R. § 404.1520c(b)(3) writing requirement is only triggered when the ALJ himself *makes a finding* that two opinions are 'equally well-supported' but 'not exactly the same.'" (quotations omitted) (emphasis in original)). Because the ALJ's persuasiveness findings regarding Dr. Moran, Dr. Herman, and Dr. Rosenstock were not as "equally well-supported" as her finding regarding Dr.

Willits, the ALJ did not err by not addressing the 20 C.F.R. § 404.1520c(c)(3)–(c)(5) factors for Dr. Willits.

Moreover, the Court has found that substantial evidence supports the ALJ's determination that an assistive device is not medically necessary. *See Healer v. Saul*, No. 19-cv-01497, 2020 WL 7074418, at *9 (W.D. Tex. Dec. 3, 2020) (holding the ALJ need not address the 20 C.F.R. § 404.1520c(c)(3)–(c)(5) factors "when the ALJ himself did not find these opinions to be in equipoise and substantial evidence supports the ALJ's determination"). As such, the ALJ did not err in evaluating the persuasives of Dr. Willits's opinions as it pertains to Plaintiff's ability to sit, stand, walk, lift, and carry and Plaintiff's use of an assistive device.

Next, the Court addresses the ALJ's finding that Dr. Willits's opinion regarding "visual impairment or urinary incontinence seems also to be not wholly supported by or consistent with the exam results or the other evidence of record." (ECF No. 7-1 at 40). The ALJ supports this finding by stating "there is no evidence to support a significant visual impairment as the claimant was found to have a[n] uncorrected visual acuity of 20/25 in both eyes" and that "there is no evidence of any ongoing complaints or treatment related to urinary incontinence." (*Id.*). Here, the ALJ notes that there is *no evidence* to support a significant visual impairment and *no evidence* of ongoing complaints or

20

treatment for urinary incontinence. (*Id.*). The ALJ can rely on a lack of evidence to support her findings. *See Ricks v. Comm'r of Soc. Sec.*, No. 18-cv-1097, 2020 WL 488285, at *6 (M.D. La. Jan. 30, 2020) ("[T]here is no evidence in either the objective medical records, or Plaintiff's testimony at the administrative hearing, of complaints or reports of any functional limitations resulting from anxiety-related symptoms or symptoms related or attributed to a mental impairment. Thus, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not have a medically determinable mental impairment."). As such, the ALJ has sufficiently addressed the supportability and consistency factors regarding Plaintiff's claim of visual impairment and urinary incontinence.

Because the ALJ adequately addressed the supportability and consistency factors regarding Plaintiff's visual impairment and urinary incontinence, the Court must determine whether the ALJ must address the 20 C.F.R. § 404.1520c(c)(3)–(c)(5) factors because "[w]hen an ALJ determines there are multiple medical opinions or prior administrative medical findings concerning the same issue that are equally persuasive in terms of supportability and consistency in the record, the ALJ must further discuss how the opinions or prior administrative findings were considered." *Benavides v. Saul*, No. 2:21-cv-00095, 2022 WL 4287645, at *4 (S.D. Tex. Aug. 4, 2022),

*report and recommendation adopted*, No. 2:21-cv-00095, 2022 WL 3701170 (S.D. Tex. Aug. 26, 2022).

Here, the ALJ did not err in not discussing the 20 C.F.R. § 404.1520c(c)(3)–(c)(5) factors because Dr. Willits is the only doctor that gave an opinion regarding Plaintiff's issue for visual impairment and urinary incontinence.   As such, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's claim of visual impairment or urinary incontinence seems to be not wholly supported by or consistent with the exam results or the other evidence of record.

### 4.  Dr. Cecilia Lonnecker

In finding Dr. Lonnecker's medical opinion only somewhat persuasive, the ALJ provided the following explanation:

> While the general diagnoses seem consistent with the evidence of record, the opinion does not provide a function-by-function assessment of the claimant's abilities related to work activities. Further, the opinion that the claimant may have difficult[y] in a competitive work setting seems to [sic] not to be wholly supported by or consistent with the objective findings and exam results and the evidence of record and may be caused in part by the degree of effort provided by the claimant. (See Exhibit 7F). In addition, the opinion regarding such difficulty is somewhat vague in its degree of limitation. Moreover, the evidence available at the hearing level supports a finding of severe mental impairment that limit the claimant's abilities, but to no more than a moderate degree in each of the four B criteria. (See Exhibits 1F-26F).

(ECF No. 7-1 at 41).

22

First, the ALJ's statement that Dr. Lonnecker did not make a function-by-function assessment of the claimant's abilities related to work activities is not itself sufficient in explaining why she found the opinion only somewhat persuasive. *See Rodriguez*, 2022 WL 18396335, at *4 (holding that an ALJ's analysis explaining why Dr. Ganesh's opinion only somewhat persuasive was insufficient, even where the ALJ stated that the opinion "does not provide a function-by-function assessment of the claimant's abilities relevant to work").

Second, the ALJ's finding that Dr. Lonnecker's opinion "that the claimant may have difficult[y] in a competitive work setting seems to [sic] not to be wholly supported by or consistent with the objective findings and exam results and the evidence of record" is not consistent with the exhibit that she cites for support.  (ECF No. 7-1 at 41 (citing Exhibit 7F; ECF No. 7-1 at 974)). Exhibit 7F consists of a psychological evaluation on May 22, 2018 by Jo Ann Formby, PsyD.  (ECF No. 7-1 at 974).  Regarding Plaintiff's functional capacity, Jo Ann Formby, PsyD found that:

> Results of this interview and mental status exam suggest [Plaintiff] does not have capacity to understand, carry out, and remember instruction (both complex and one-two step). She is not able to sustain concentration and persist in work-related activity at a reasonable pace. She is not able to maintain effective social interaction on a consistent and independent basis, with supervisors, co-workers, and the public. She is not able to deal with normal pressures in a competitive work setting.

23

(*Id.*).  This finding by Jo Ann Formby, PsyD supports Dr. Lonnecker's opinion that Plaintiff may have difficulties in a competitive work setting.  (*Id.*).  As such, the ALJ's statement that Dr. Lonnecker's opinion is inconsistent with Exhibit 7F is unfounded.

Third, similar to the discussion above, the ALJ did not specifically note where Dr. Lonnecker's opinion was not supported by the medical evidence and how the opinion compared to the other evidence in the record, other than her unfounded reference to Exhibit 7F.  (*Id.*).  To wrap up her analysis, the ALJ then cites over 800 pages of the record to support her conclusory statement that "the evidence available at the hearing level supports a finding of severe mental impairment that limit the claimant's abilities, but to no more than a moderate degree in each of the four B criteria."  (*Id.*).

Thus, the ALJ did not provide more than a generic, cursory explanation of her findings.  *See Rodriguez*, 2022 WL 18396335, at *4; *Howen*, 2021 WL 1169331, at *6.  As such, the Court finds that substantial evidence does not support the ALJ's evaluation of Dr. Lonnecker.  *Cf. Ramirez*, 2023 WL 1456786, at *4.  Because the ALJ's explanation of supportability and consistency is lacking, the Court need not address the factors in 20 C.F.R. § 404.1520c(c)(3)–(c)(5).

24

### 5. Dr. Richard Campa

In finding Dr. Campa's medical opinion somewhat persuasive, the ALJ

provided the following explanation:

> Although it is consistent with the determination that the
> claimant's conditions are not disabling, the opinion is somewhat
> internally inconsistent in that it assigns both moderate and
> marked limitations to the claimant's ability to understand,
> remember, or apply information, and assigns both moderate an[d]
> no limits to each of the three remaining B criteria. Moreover, the
> evidence available at the hearing level supports a finding of severe
> mental impairments, that limit the claimant's abilities in each of
> the four B criteria, but to no more than a moderate degree. (See
> Exhibits 1F-26F). Accordingly, the evidence available at the
> hearing level is consistent with the residual functional capacity set
> forth herein.

(ECF No. 7-1 at 38).

Here, the ALJ provided a specific inconsistency in the record to support

her finding that Dr. Campa's opinions were somewhat persuasive.  The ALJ

states that Dr. Campa's "opinion is somewhat internally inconsistent in that it

assigns both moderate and marked limitations to the claimant's ability to

understand, remember, or apply information, and assigns both moderate an[d]

no limits to each of the three remaining B criteria" and cites Exhibits 1A and

2A in her decision to support this finding.   (*Id.* at 38).   This evidence is

sufficient in finding Dr. Campa's opinion somewhat persuasive.  *See Payne v.*

*Kijakazi*, No. 3:22-cv-05643, 2023 WL 5082264, at *8 (W.D. La. July 24, 2023),

*report and recommendation adopted*, No. 3:22-cv-05643, 2023 WL 5088942

(W.D. La. Aug. 8, 2023) (holding an ALJ supported her findings with citations to record evidence that an agency psychologist's opinions were "persuasive" when the ALJ stated "not only are the 'marked' limitations of functioning selected by Brooks-Ware on the Questionnaire inconsistent with her own treatment notes, the limitations also are internally inconsistent with the assigned GAF score on the form itself").

Because the ALJ adequately addressed the supportability and consistency factors, the Court must determine whether the ALJ properly addressed the 20 C.F.R. § 404.1520c(c)(3)–(c)(5) factors because "[w]hen an ALJ determines there are multiple medical opinions or prior administrative medical findings concerning the same issue that are equally persuasive in terms of supportability and consistency in the record, the ALJ must further discuss how the opinions or prior administrative findings were considered." *Benavides*, 2022 WL 4287645, at *4.

Here, the ALJ found that Dr. Campa, Dr. White, and Dr. Lonnecker were all "somewhat persuasive" regarding Plaintiff's mental functioning.  (ECF No. 7-1 at 37–41; ECF No. 10 at 19).  However, the ALJ is not required to discuss the 20 C.F.R. § 404.1520c(c)(3)–(c)(5) factors for Dr. Campa because there is no "tie" between two medical opinions that triggers consideration of such factors. *See Cooley*, 587 F. Supp. 3d at 497 ("[T]he ALJ's written finding that there is a

'tie' between two medical opinions is what triggers express consideration of 20 C.F.R. § 404.1520c(c)(3)–(5)."). The ALJ's finding that Dr. Campa's opinions are somewhat persuasive is based on internal inconsistencies in B criteria limitations that Dr. Campa assigned, rather than a finding that two doctors' opinions are equally supported but not exactly the same. *See id.* ("On its face, the 20 C.F.R. § 404.1520c(b)(3) writing requirement is only triggered when the ALJ himself *makes a finding* that two opinions are 'equally well-supported' but 'not exactly the same.'" (quotations omitted) (emphasis in original)). As such, the ALJ did not err in evaluating the persuasives of Dr. Campa's medical opinions.

### 6. Dr. Robert White

In finding Dr. White's medical opinion only somewhat persuasive, the ALJ provided the following explanation:

> Again, although the opinion is consistent with the determination that the claimant's conditions are not disabling, the evidence available at the hearing level supports a finding of severe mental impairments, that limit the claimant's abilities in each of the four B criteria but to no more than a moderate degree. (See Exhibits 1F-26F). Accordingly, the evidence available at the hearing level is consistent with the residual functional capacity set forth herein.

(ECF No. 7-1 at 38).

Again, the ALJ did not specifically note where Dr. White's opinion was not supported by the medical evidence and how the opinion compared to the

other evidence in the record. (*Id.*). Rather, the ALJ again cites over 800 pages of the record to support her conclusory statement that "the evidence available at the hearing level supports a finding of severe mental impairments, that limit the claimant's abilities in each of the four B criteria but to no more than a moderate degree." (*Id.*). The ALJ did not cite a specific record in the evidence to support this conclusion and simply refers to over 800 pages of medical evidence as the "evidence available at the hearing level." (*Id.*).

Thus, the ALJ did not provide more than a generic, cursory explanation of her findings. *See Rodriguez*, 2022 WL 18396335, at *4; *Howen*, 2021 WL 1169331, at *6. As such, the Court finds that substantial evidence does not support the ALJ's evaluation of Dr. White. *Cf. Ramirez*, 2023 WL 1456786, at *4. Because the ALJ's explanation of supportability and consistency is lacking, the Court need not address the factors in 20 C.F.R. § 404.1520c(c)(3)–(c)(5).

### 7. Harmless Error Analysis[8]

The Court cannot meaningfully review whether the ALJ's legal error in failing to properly address the persuasiveness factors was harmless. "Harmless error exists when '[i]t is inconceivable that the ALJ would have reached a different conclusion' absent the error." *Kilby v. Kijakazi*, No. 4:20-

---

[8] This section applies to all the ALJ's errors in failing to properly address the persuasiveness factors of the Doctors' medical opinions, except for Dr. Willits and Dr. Campa's medical opinions as the Court did not find error regarding the ALJ's persuasiveness analysis of Dr. Willits and Dr. Campa.

cv-03035, 2022 WL 1797043, at *5 (S.D. Tex. Mar. 15, 2022) (quoting *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).  Had the ALJ correctly addressed the persuasiveness of Dr. Herman, Dr. Rosenstock, Dr. Moran, Dr. White, and Dr. Lonnecker's opinions, she may have found them more or less persuasive than other medical opinions.  Because the ALJ failed to provide an adequate explanation for why the record supports her finding that the opinions are only somewhat persuasive, "'significant gaps exist in the ALJ's discussion of the medical opinions that leave this Court unable to build a logic bridge between the evidence and [her] finding[s].'"  *Id.* (quoting *Cooley*, 2021 WL 4221620, at *7).

Because the ALJ failed to provide a "logic bridge" for her findings regarding the persuasiveness of those medical opinions, the Court can only speculate as to what conclusion the ALJ would have reached had she properly applied the persuasiveness factors in her analysis of Dr. Herman, Dr. Rosenstock, Dr. Moran, Dr. White, and Dr. Lonnecker's opinions.  Accordingly, the Court recommends that remand is required for the ALJ to sufficiently explain how she considered the persuasiveness factors for Dr. Herman, Dr. Rosenstock, Dr. Moran, Dr. White, and Dr. Lonnecker's medical opinions.  *See id.*

## IV.    Conclusion

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (ECF No. 10) be **GRATNED IN PART** and **DENIED IN PART**, the Court specifically recommends it be denied in part with respect to her claim that the ALJ failed to sufficiently address the persuasiveness factors as to Dr. Willits and Dr. Campa's medical opinions and her claim that the ALJ's finding that an assistive device is not medically necessary and granted in part with respect to all the remaining doctors' medical opinions. The Court **RECOMMENDS** Commissioner's Motion for Summary Judgment (ECF No. 13) be **GRANTED IN PART** and **DENIED IN PART**, the Court specifically recommends it be granted in part with respect to Plaintiff's claim that the ALJ's finding that an assistive device is not medically necessary and Plaintiff's claim that the ALJ failed to sufficiently address the persuasiveness factors regarding Dr. Willits and Dr. Campa's medical opinions and denied in part with respect to all the remaining doctors' medical opinions. The Court **FURTHER RECOMMENDS** that the case be **REMANDED** for further administrative proceedings, consistent with this opinion, including identifying portions of the record relied on to support the ALJ's determinations.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file

written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on June 13, 2024.

_____
Richard W. Bennett
United States Magistrate Judge

31